United States District Court
Southern District of Texas
**ENTERED**
June 01, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARRIS COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NO. 89, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-19-1755 |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | § § § § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Harris County Water Control and Improvement District No. 89 sued E&M Enterprises, Inc. and Philadelphia Indemnity Insurance Company in state court, alleging that E&M breached its March 2016 Agreement to build the District's administrative building and related facilities by constructing them improperly and failing to make the progress the Agreement required. (Docket Entry No. 1-B). The District alleges that the March 2016 Agreement also required E&M to provide a payment bond and a performance bond issued by a surety company and that Philadelphia issued both bonds, naming E&M as principal and the District as obligee. (*Id.* at ¶¶ 9, 10, 12). The District asserted claims for breach of contract and breach of warranty against E&M and claims for breach of contract and breach of the performance bond obligations against Philadelphia. (*Id.* at ¶¶ 14, 25–26). Although E&M consented to Philadelphia's removal to federal court, it did not file an answer or otherwise defend. This court entered default against E&M in July 2019. (Docket Entry No. 14).

The District and Philadelphia have cross-moved for partial summary judgment on three issues: (1) whether Philadelphia's performance bond obligations are enforceable under the March 2016 Agreement; (2) whether the construction project was abandoned and the one-year statute of

limitations has already passed; and (3) whether there are genuine factual disputes material to determining Philadelphia's affirmative defenses of assumption of the risk, contributory negligence, damages that not recoverable under the bond, and release.

Based on the complaint, the motions and responses, the summary judgment record, and the applicable law, the court grants Philadelphia's motion in part and denies it in part, and grants the District's motion in part and denies it in part. The court finds, based on the undisputed facts or disputed facts resolved in the nonmovant's favor for the purpose of this motion, that, as a matter of law:

(1) Philadelphia is not required to perform its performance bond obligations because it did not assent to the 2016 Agreement;

(2) the construction project was not abandoned as of April 2018 and the one-year statute of limitations has not passed;

(3) Philadelphia's affirmative defense that damages are not recoverable under the bond is legally relevant to this dispute, but the affirmative defenses of assumption of the risk, contributory negligence, and release are not available.

In sum, Philadelphia is not required to perform under the 2016 Agreement, the statute of limitations has not passed, and Philadelphia may continue to claim that damages are not recoverable under the performance bond.

The reasons for these rulings are set out below.

**I.       Background**

Starting in September 2015, Harris County Water Control and Improvement District No. 89 entered into several agreements with E&M Enterprises, Inc. to construct the District's administrative building and related facilities. (Docket Entry No. 1-2 at ¶ 8; *see also* Docket Entry Nos. 32-4, 32-5). The agreements required E&M to provide the District with a payment bond and a performance bond issued by a surety company. (Docket Entry No. 1-2 at ¶ 9). Philadelphia

Indemnity Insurance Company agreed to issue both bonds, naming E&M as principal and the District as obligee. (*Id.* at ¶¶ 10, 12; *see also* Docket Entry Nos. 32-4, 32-5).

On September 18, 2015, E&M signed a "NOTICE OF AWARD" from the District to construct the "WCID 89" administration building for $1,380,055.16. (Docket Entry No. 32-4). This Notice of Award, according to Philadelphia, was accompanied by a "SECTION 005100 AGREEMENT" for the "WCID 89 Administration Building." (Docket Entry No. 32-5). The 2015 SECTION 00510 Agreement stated that "the form of agreement to be used for the contract for construction shall be AIA A-105-2007" and "AIA A-201-2007," both standard documents issued by the American Institute of Architects. (*Id.*).[1] The 2015 Agreement also stated that that these "two [AIA] documents, together with the Bid Documents consisting of the Project Manual and the drawings shall make up the Contract for Construction." (*Id.*).

In March 2016, the District and E&M executed another "SECTION 00510 AGREEMENT." (Docket Entry No. 32-7 at 1). The March 2016 Agreement was "binding upon all parties hereto" and required E&M to finish the project in 270 calendar days. (*Id.*). Although the total cost remained $1,380,055.16, the 2016 Agreement did not require E&M to use specific standard documents, including the AIA A-105-2007 and AIA A-201-2007. (*Id.*). The 2016 Agreement named both E&M and the District, but, also unlike the 2015 Agreement, it did not name or mention Philadelphia, surety agreements, or the performance bond.

In July 2017 and after alleged construction mishaps, the District sent a "Notification of non-compliance" to E&M and Philadelphia. (Docket Entry No. 32-12 at 2). In April 2018, the District informed E&M and Philadelphia by letter that E&M had "failed to make any substantial

---

[1] The American Institute of Architects "publishes industry standard documents for design and construction projects . . . to establish a common basis for the primary and secondary relationships on the typical construction project." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 777 (Tex. 2006) (citations omitted).

3

progress on the project" and complained that "[t]he site has been abandoned since the last payment was made in February 2018." (Docket Entry No. 32-12 at 3–4). The letter stated that "E&M does not have the resources or manpower to complete this project as bid." (*Id.* at 4). E&M responded by a letter stating that it "ha[d] not abandoned this project," and that it "had a project manager on site meeting with subcontractors." (Docket Entry No. 34-6 at 3). E&M claimed that it had "completed 75[ ]percent of the project." (*Id.*).

In August 2018, the District terminated E&M under the 2016 Agreement for default, alleging that E&M had failed to perform. (Docket Entry No. 1-2 at ¶ 16). The District sued in state court in April 2019, alleging that E&M had failed to make adequate progress on the project and had failed to properly perform its contractual duties. (Docket Entry No. 1-2). The District asserted breach-of-contract and breach-of-warranty claims against E&M, and breach-of-contract and performance-bond claims against Philadelphia. (*Id.* at ¶¶ 25–26). While E&M consented to Philadelphia's removal to federal court, it did not file an answer or otherwise defend, and this court granted the District's request for entry of default against E&M in July 2019. (Docket Entry No. 14). The District then moved for default judgment, (Docket Entry No. 18), which this court denied. (Docket Entry No. 23).[2]

Both the District and Philadelphia later filed motions for summary judgment. (Docket Entry Nos. 31, 32). The District argues that Philadelphia failed to offer or point to record evidence supporting its affirmative defenses of assumption of the risk, contributory negligence, damages not recoverable under the bonds, and release. (Docket Entry No. 31). Philadelphia argues that it was not bound by the District's 2016 Agreement with E&M because, as a surety, it did not consent

---

[2] The court found that the District has not submitted evidence showing that E&M had been properly served with the default judgment motion by certified as required by Local Rule 5.5. (Docket Entry No. 23 at 3). The court also held that default judgment was not appropriate at that time because it could result in "incongruous and inconsistent rulings" between the defendants. (*Id.* at 4).

to that new Agreement. (Docket Entry No. 32 at 7–12). Instead, Philadelphia maintains that its only performance- and payment-bond obligations stem from the September 2015 Agreement, not any of the subsequent agreements pertaining to the same project. (*Id.* at 1–2). Philadelphia also asserts that the one-year statute of limitations has passed because the project was abandoned for at least one year. (Docket Entry No. 32 at 12–14).

In light of the District's motion, Philadelphia stated that it would dismiss its affirmative defenses of assumption of the risk, contributory negligence, and release, but it continued to press its argument that damages are not recoverable under the performance bond. (Docket Entry No. 33 at 1, 4-5). In response, the District argued that Philadelphia waived the affirmative defense of material alteration of a contract, and in any event, genuine factual disputes material to determining the defense and the statute of limitations preclude a ruling as a matter of law. (Docket Entry No. 34 at 4).

Philadelphia replies that it did not raise a material-alteration defense, but instead argued that the 2016 and 2015 Agreements differ in that the 2016 Agreement did not require the use of, or refer to, the standard AIA documents, and that it lacked third-party oversight. (Docket Entry 35 No. at 1; Docket Entry No. 44 at 1–3). Philadelphia also argues that it relied on statements from E&M and the District that E&M had abandoned the project before April 2018, citing the testimony of an AEI Engineering representative to that effect. (Docket Entry No. 44 at 3–5). As a result, according to Philadelphia, the statute of limitations expired before suit was filed. (*Id.*).

The District's supplemental response reiterated that Philadelphia had waived its material-alteration defense and had misrepresented the 2015 and 2016 Agreements. (Docket Entry No. 43 at 1–2). The District also argues that Philadelphia waived any right to receive notice of changes to the 2015 Agreement, and that this Agreement allowed the District to modify its terms without

5

notice to Philadelphia. (Docket Entry No. 45 at 1–2). Finally, the District argues that changes from the 2015 Agreement did not affect Philadelphia, and that abandonment must be analyzed from E&M's perspective. (*Id.* at 2–4).

The parties' arguments are analyzed against the record and the applicable legal standards.

## II. The Legal Standards

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 610 (5th Cir. 2018) (citations and internal quotation marks omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating'" that "there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). "If the moving party fails to meet [its] initial burden, [the summary judgment motion] must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC*

v. *Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its . . . burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (brackets omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

### III. Analysis

#### A. Philadelphia's Arguments

Philadelphia argues that that it is not liable under the 2016 Agreement because it assented only to the 2015 Agreement. (Docket Entry No. 32 at 7–12). Because contracts involving sureties are strictly construed, Philadelphia argues, it is liable only if it assented to the 2016 Agreement. Philadelphia also argues that the one-year statute of limitations has passed, which turns on whether the Agreement was abandoned by April 2018. (*Id.* at 12–14). Last, Philadelphia asserts that of its affirmative defenses, assumption of the risk and contributory negligence are not relevant to this dispute, but the defense that damages are not recoverable under the bonds it issued remains relevant. (Docket Entry No. 33 at 3–5).[3]

---

[3] The parties describe damages not recoverable under the bond as an affirmative defense. For consistency, this court does as well.

### B. Liability Under the 2016 Agreement

The court "appl[ies] common-law contract principles to interpret surety bonds and determine a surety's liability." *N. & W. Ins. Co. v. Sentinel Inv. Grp., LLC*, 419 S.W.3d 534, 538 (Tex. App.—Hous. [1st Dist.] 2013, no pet.). "The liability of a surety is determined by the language of the bond itself." *Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex. 1992). Accordingly, "[t]he construction of a surety bond is a question of law for the court." *N. & W. Ins. Co.*, 419 S.W.3d at 538.

"Contract terms will be given their plain, ordinary, and generally accepted meanings unless the contract indicates a technical or different sense." *Id.* "If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010). "A contract is ambiguous only if it is subject to two or more reasonable interpretations." *N. & W. Ins. Co.*, 419 S.W.3d at 538. "A lack of clarity" or a "difference in the interpretation" does not amount to, in and of itself, an ambiguity. *Id.* "Courts should not rewrite contracts to insert provisions that the parties could have included or imply restraints for which they have not bargained." *Id.*

Surety agreements, in particular, "are strictly construed, and sureties are bound only by the precise terms of the contract they have secured." *Kendziorski v. Saunders*, 191 S.W.3d 395, 403–04 (Tex. App.—Austin 2006, no pet.). "[S]ureties are no further bound than they have contracted to be." *Id.* at 404 (citation omitted). "The liability of a surety cannot be extended by implication, construction, or presumption beyond the terms of his contract nor to persons who are not parties thereto." *Elliott Elec. Supply, Inc. v. Korte Constr. Co.*, No. SA-12-CA-623-JWP, 2013 WL 12183037, at *2–3 (W.D. Tex. Jan. 15, 2013) (citing *New Amsterdam Cas. Co. v. Bettes*, 407 S.W.2d 307, 315 (Tex. Civ. App.–Dallas 1966, writ ref'd n.r.e.)).

"If the creditor and the principal debtor vary in any degree the terms of the contract, then a new contract has been formed, upon which new contract the surety is not obligated and cannot, therefore, be bound." *Jarecki Mfg. Co. v. Hinds*, 295 S.W. 274, 275 (Tex. Civ. App.—Eastland 1927), writ dismissed, 6 S.W.2d 343 (Tex. Comm'n App. 1928); *see also United States v. Vahlco Corp.*, 800 F.2d 462, 465 (5th Cir. 1986). Other courts, though not interpreting Texas law, have reached similar conclusions on surety agreements. *See St. Petersburg Bank & Tr. Co. v. Boutin*, 445 F.2d 1028, 1031 (5th Cir. 1971) ("[S]ince a suretyship obligation is imposed only with the express consent of the promisor, . . . a new contract may not be substituted for the old one without his consent."); *Reliance Ins. Co. of Philadelphia v. Colbert*, 365 F.2d 530, 534 (D.C. Cir. 1966) ("A surety company is not a public utility. It may, for any or no reason, conclude not to furnish its bond with respect to a particular contract.").

Philadelphia argues that the District has sued only under the 2016 Agreement, but Philadelphia agreed to issue the payment and performance bond only under the September 2015 Agreement. (Docket Entry No. 32 at 7; *see also* Docket Entry Nos. 32-4, 32-5). Philadelphia points to well-established case law holding that sureties may not be bound to substituted contracts to which they did not assent. (Docket Entry No. 32 at 7); *see also St. Petersburg Bank*, 445 F.2d at 1031; *Jarecki Mfg. Co.*, 295 S.W. at 275. Philadelphia also argues that the 2016 Agreement was materially different from the 2015 Agreement because it did not incorporate the AIA standards, which substantially increased Philadelphia's risks as a surety. (Docket Entry No. 32 at 8–12).

In response, the District argues that Philadelphia waived the defense of material alteration because it was not pleaded as an affirmative defense. (Docket Entry No. 34 at 6–7). In any event, the District contends, Philadelphia cannot satisfy the three-part test for material alteration because

9

there was no material alteration to the underlying 2015 Agreement and Philadelphia suffered no harm from any alteration. (*Id.* at 7). In addition, the District contends that the 2015 Agreement was actually "E&M's proposed bid and notice of award, not a signed contract between E&M and the District." (*Id.* at 8).

Philadelphia replies that there was a new agreement formed in 2016, which makes the question of whether the 2016 agreement materially altered the 2015 Agreement a red herring. (Docket Entry 35 at 2). Philadelphia reiterates that it never assented to the 2016 Agreement and that the District is not seeking to enforce the 2015 Agreement. (*Id.*). To counter the District's assertion there was no 2015 Agreement that governed the project work, Philadelphia cites the District's bid-proposal package from 2015, which contains a "SECTION 00510 AGREEMENT." (*Id.* at 3; *see also* Docket Entry No. 32-5 ). This document states, in pertinent part, that "the form of agreement to be used for the contract for construction shall be AIA A-105-2007" and "AIA A-201-2007," and notes that these "two documents, together with the Bid Documents consisting of the Project Manual and the drawings shall make up the Contract for Construction." (Docket Entry No. 32-5). Philadelphia argues that the District substituted the 2016 Agreement for the 2015 Agreement, which discharged any obligations Philadelphia had under the superseded the 2015 Agreement. (Docket Entry No. 35 at 3–4). Philadelphia also cites evidence that a District representative admitted in a deposition that the 2016 Agreement "replaced" the 2015 Agreement. (*Id.* at 3 (citing Docket Entry 32-1 at 54:7–13)).

The District responds that Philadelphia, in the 2015 Agreement, agreed to "further construction agreements," such as changes or alterations in the Agreement terms, making cases like *Jarecki Mfg. Co* inapplicable. (Docket Entry No. 43 at 8–9). The District argues that the substitution of a new agreement occurs only when a "later agreement is so inconsistent with a

former agreement that the two cannot subsist together." *Id.* (quoting *Scalise v. McCallum*, 700 S.W.2d 682, 684 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)). According to the District, finding that Philadelphia's obligations under the bonds are discharged is inappropriate because the 2016 Agreement is only a "slight change" without "material differences" from the 2015 Agreement. (Docket Entry No. 43 at 10).

In response, Philadelphia notes that the 2015 Agreement "specifically called for the use of standard AIA agreements and the oversight of a neutral third-party." (Docket Entry No. 44 at 2). In contrast, the 2016 Agreement replaced a "neutral Architect" with a "District-controlled Engineer," effectively removing "neutral third-party oversight," "payment approvals[,] and dispute resolutions" from the Agreement. (*Id.* at 3).

The District retorts that Philadelphia waived notice of changes to the 2015 Agreement terms because "the bond issued by [Philadelphia] specifically allowed bond principal E&M and the District to change, modify, or alter the terms and conditions of their agreement, without notice to [Philadelphia]." (Docket Entry 45 at 1–2). Additionally, the substitution of the District's engineer did not "in any way affect[] the Surety or change its perceived 'protections.'" (*Id.*).

The case law favors Philadelphia's assertion that, as a surety, it cannot be bound to future agreements that it did not specifically assent to. *See, e.g.*, *Kendziorski*, 191 S.W.3d at 403 (surety agreements "are strictly construed, and sureties are bound only by the precise terms of the contract they have secured"); *Elliott Elec. Supply*, 2013 WL 12183037, at *3 ("The liability of a surety cannot be extended by implication, construction, or presumption beyond the terms of his contract nor to persons who are not parties thereto.").

In contrast, the District cites no binding authority supporting its argument that sureties are bound to future agreements without their specific and contemporaneous consent. While the

11

District argues that Philadelphia agreed to unspecified future changes in the 2015 Agreement, the District offers no case law citations or other authority to support its argument that this makes cases such as *Kendziorski* distinguishable or inapposite.[4]

While the District argues that the 2016 Agreement is only slightly and immaterially different from the 2015 Agreement, it acknowledges that there are differences.[5] Even if the 2016 Agreement only slightly changed the 2015 Agreement, as the District contends, "sureties are bound only by the precise terms of the contract they have secured." *Kendziorski*, 191 S.W.3d at 403. As a matter of law, Philadelphia is not bound by the 2016 Agreement, which superseded the 2015 Agreement, because Philadelphia did not agree to the precise terms of the 2016 Agreement.[6] The court grants Philadelphia's motion for summary judgment on this point.

### C.     The Statute of Limitations

Under Texas law, "[a] suit on a performance bond may not be brought after the first anniversary of the date of final completion, abandonment, or termination of the public work contract." *See* TEX. GOV'T CODE § 2253.078(a). To determine whether abandonment occurred, courts look to the "'intention [of the parties] which must be established by clear and satisfactory evidence,' and if relying on conduct, 'the acts relied upon must be positive, unequivocal and

---

[4] The District's reliance on *Scalise*, 700 S.W.2d at 684, is misplaced because that case did not analyze the substitution of a contract in the context of surety agreements.

[5] The District's related argument that the 2015 Agreement was not a contract is contradicted by the "Section 00510 Agreement," which states that the "the form of agreement to be used for the contract for construction shall be AIA A-105-2007 . . . [and] AIA A-201-2007" and that these "two documents, together with the Bid Documents consisting of the Project Manual and the drawings[,] shall make up the Contract for Construction." (Docket Entry No. 32-5).

[6] The District argues, without evidentiary citations, that the "Section 00510 Agreement" specifying certain AIA standards was not "sent or in any way referenced in the notice of award letter or actual notice of award." (Docket Entry No. 34 at 8 n.4). As Philadelphia observes, "the Section 00510 Agreement was part of the District's Bid Proposal package and produced and bates labeled by the District as 'DISTRICT000024.'" (Docket Entry No. 35 at 3). Regardless, this dispute does not create a factual dispute precluding summary judgment because the District has acknowledged differences between the 2015 and 2016 Agreements. No reasonable factfinder could find that Philadelphia contemporaneously assented to the 2016 Agreement.

inconsistent with the existence of the contract.'" *Dall./Fort Worth Int'l Airport Bd. v. INET Airport Sys., Inc.*, 819 F.3d 245, 255 (5th Cir. 2016) (quoting *Capital Steel & Iron Co. v. Standard Accident Ins. Co.*, 299 S.W.2d 738, 740–41 (Tex. App.—Amarillo 1952, no writ)); *see also Capital Steel & Iron Co.*, 299 S.W.2d at 741 ("The abandonment of a contract is a matter of intent.").

The District asserts that it filed within the statute of limitations because Philadelphia sent a letter in March 2019 denying its performance bond obligations, and the District filed suit in April 2019. (Docket Entry No. 31 at 3). In response, Philadelphia asserts that the statute of limitations passed months before the District filed suit. (Docket Entry No. 32 at 12). By July 2017, the District had sent a "formal non-compliance notification to E&M" and had "suspended regular site meetings" because the contractor was not on site. (*Id.* at 13). In response to a letter from E&M, the President of the District, Sharyn Smalls, stated by letter in April 2018 to Philadelphia's Surety Division that "[t]he site has been abandoned since the last payment was made in February 2018." (*Id.* (citing Docket Entry No. 32-12); *see also* Docket Entry No. 33 at 4–5). Philadelphia argues that the Agreement was abandoned over a year before the District sued, barring the claim under TEX. GOV'T CODE § 2253.078(a).

The District responds that, as late as April 2018, E&M had denied abandoning the project and stated that it had a superintendent and subcontractor on site. (Docket Entry No. 34 at 3, 13). The District notes that Philadelphia acknowledged the District's performance-bond claim against E&M in May 2018 and again in August 2018, and that the District did not terminate E&M for default until August 24, 2018. (*Id.* at 3–4). The District also argues that Philadelphia did not mention any time-bar to suit until March 2019, but instead "appeared to engage the District in the negotiation of a . . . replacement Contract" that month as well. (*Id.* at 4). At the very least, the District asserts, there is a genuine factual dispute material to determining whether the project was

13

abandoned by April 2018. (*Id.* at 12–13). Finally, the District contends that abandonment must be analyzed from the point of view of the party alleged to have abandoned the project. (*Id.*). For these reasons, the District asserts that it filed suit within the one-year statute of limitations. (*Id.* at 4, 12–13).

Philadelphia responds by arguing that it relied on the District's own contemporaneous statements of abandonment. Philadelphia notes that the District sent a notice in April 2018 asserting that the project had been abandoned since February 2018. (Docket Entry No. 35 at 5–6). In addition to suspending meetings, the District sent E&M and Philadelphia two letters "incorporating previous claims of abandonment." (*Id.* at 6). Philadelphia asserts that testimony from Nancy Blackwell, a corporate representative of AEI Engineering (the company that served as the District's project manager), supports the argument that E&M had abandoned the project. (Docket Entry No. 44 at 3–4; *see also* Docket Entry No. 44-1). Blackwell testified that the field reports, which are "important" to see "what's actually happening at the site," stopped in May 2017, which is consistent with the facts that E&M did not seek additional payment after its June 2017 pay estimate, and that meetings in and after November 2017 were cancelled. (*Id.* at 3 (citing Docket Entry No. 44-1 at 42:3–6.)). Philadelphia also notes that the District withheld payment in June 2017 and offered no evidence that "E&M was actually present on the project" or pursuing completion in February 2018. (*Id.* at 3–4).

The District asserts that E&M was still performing work on site in February 2018 and beyond. As a result, it asserts, Philadelphia has failed to indicate by "clear and satisfactory evidence" that the contract was abandoned in a way that was "positive, unequivocal and inconsistent with the existence of the contract." (Docket Entry No. 45 at 3–4 (citing *Dallas*, 819 F.3d at 255)). The District asserts that even "the bond principal [E&M] itself stated in writing on

April 17, 2018 that it had not abandoned the project." (*Id.* at 3–4; *see also* Docket Entry No. 34-6).

A reasonable factfinder could conclude that, as of April 2018, the parties had not abandoned the contract. As the District notes, E&M stated in an April 2018 letter to Chris Richardson, the District's attorney, that "E&M has not abandoned this project [and] we have had a project manager on site meeting with subcontractors." (Docket Entry No. 34-6 at 3). This and similar statements are far from "clear and satisfactory evidence" that a party intended to abandon the project. *Dallas*, 819 F.3d at 255. Because Philadelphia is "relying on [the] conduct" of the parties to establish that the Agreement and project were abandoned, Philadelphia must demonstrate that the parties' actions were "positive, unequivocal, and inconsistent with the existence of the contract." *Id.* The present record does not meet this high bar. The record instead contains conflicting evidence that can support conflicting inferences and findings. At this summary judgment stage, the court cannot conclude that, as a matter of law, the one-year statute of limitations passed. *See* TEX. GOV'T CODE § 2253.078(a). The court denies Philadelphia's motion for summary judgment on this point.

### D. The Affirmative Defenses

Philadelphia asserted four affirmative defenses: assumption of the risk, contributory negligence, release, and damages not recoverable under the bond. (Docket Entry No. 33 at 1–2). Under Texas law, a "surety bond is subject to 'the common law of contracts, which is not punitive in nature.'" *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 420 (Tex. 1995) (quoting *State v. Alpha Oil & Gas, Inc.*, 747 S.W.2d 378, 379 (Tex. 1988)). By contrast, common-law defenses such as "assumption of the risk and contributory negligence" are asserted

to bar tort-based recoveries, not contract claims. *Cf. Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 209–10 (Tex. 2015).

The District argued that Philadelphia's affirmative defenses of assumption of the risk, contributory negligence, damages not recoverable under the bond, and release do not apply. (Docket Entry No. 31 at 4–8). In response, Philadelphia asked to dismiss its affirmative defenses of assumption of risk, contributory negligence, and release, requesting leave to amend the pleadings accordingly. (Docket Entry No. 33 at 1–2). Philadelphia continues to maintain that damages are not recoverable under the bond because, as asserted earlier, it is not liable under the 2016 Agreement. (*Id.* at 3–5). Philadelphia again argues that the 2016 Agreement was abandoned. (*Id.* at 5).

Because the parties agree that the affirmative defenses of assumption of the risk, contributory negligence, and release do not apply, (Docket Entry No. 31 at 4–8; Docket Entry No. 33 at 3–5), the court grants the District's motion for summary judgment on these defenses. As to the defense of damages not recoverable under the bond, the District's motion for summary judgment is denied because, as explained earlier, the 2016 Agreement differed from the 2015 Agreement and Philadelphia is not liable under the 2016 Agreement, as a matter of law.

### IV. Conclusion and Order

The District's motion for partial summary judgment, (Docket Entry No. 31), is granted in part and denied in part, and Philadelphia's motion for summary judgment, (Docket Entry No. 32), is granted in part and denied in part. The court grants Philadelphia's motion in part, finding that Philadelphia, as a surety, is not bound to, and cannot be held liable under, the 2016 Agreement because it did not agree to the precise terms of that Agreement. The court denies the rest of

Philadelphia's motion, finding that the statute of limitations has not passed based on the undisputed facts.

The court grants part of the District's motion regarding three affirmative defenses, finding that assumption of the risk, contributory negligence, and release are inapplicable. The rest of the District's motion is denied because the 2016 Agreement differed from the 2015 Agreement.

The parties are ordered to file a proposed order, including a proposed final judgment, reflecting these rulings no later than **June 19, 2020**.

SIGNED on June 1, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge